David W. Dow (SBA #007377)
The Law Offices of David W. Dow
3104 E. Camelback #281
Phoenix, Arizona 85016
602-550-2951
Ddowlaw1@gmail.com
Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Charles Cornfield, Benjamin Robert Flynn, Alexander J. Goodwin,  Bernard Linser, Matthew Mansfield, Patrick Murphy, William J. O'Hayer, and Matthew V. Parker, | **Case No. 2:16-cv-00924-PHX-ROS** |
| Plaintiffs, | |
| v. | **THIRD AMENDED COMPLAINT AND JURY TRIAL DEMAND** |
| Arizona Board of Regents, a body politic and agency of the State of Arizona, Michael Thompson, James Hardina, and Louis Scichilone, | |
| Defendants. | |

Plaintiffs Charles Cornfield ("Cornfield"), Benjamin Robert Flynn, ("Flynn"), Alexander J. Goodwin ("Goodwin"), Bernard Linser ("Linser"), Matthew Mansfield ("Mansfield"), Patrick Murphy ("Murphy"), William J. O'Hayer ("O'Hayer"), and Matthew V. Parker ("Parker"), by and through their undersigned counsel, submit and file this Third Amended Complaint pursuant to Federal Rules of Civil Procedure

("FRCP"), Rule 15(a) and the Orders filed on July 21, 2016 (dkt. #21) dismissing the Second Amended Complaint with leave to file an Amended Complaint and on July 29, 2016 (dkt. #23) extending the date for the filing of the (Third) Amended Complaint until August 25, 2016.

**Note re LRCiv 15.1:** In response to the Court's ruling that the Second Amended Complaint had numerous pleading under FRCP Rule 8 and the U.S. Supreme Court decisions in the *Twombly* and *Iqbal* cases, undersigned counsel obtained the services of a more experienced employment law practitioner who determined that it would be pointless to modify the Second Amended Complaint by the LRCiv. 15.1 process because the entire pleading should be drafted "from the ground up" and that a redlined version would consist of the entire Second Amended Complaint with redline cross out followed by the new Third Amended Complaint ("TAC") with no markings. This TAC contains fewer Defendants and fewer claims and specifies as to each claim who the Plaintiff(s) is, what relief is sought under what legal theory, against which specific Defendant(s).  This TAC was drafted "from scratch" by the undersigned and is not simply the FAC with minor strikeouts and insertions.

### 1. Parties, Jurisdiction and Venue

1. The Plaintiffs, **Cornfield, Flynn, Goodwin, Linser, Mansfield, Murphy, O'Hayer,** and **Parker** are all citizens of the United States of America and residents of the State of Arizona.

2. The Defendant, Arizona Board of Regents ("ABOR") is, and has been at all times material to this Complaint:

(A) a political subdivision of the State of Arizona and a body politic;

(B) the jural entity which owns, governs and operates the public universities of the State of Arizona, including the Arizona State University ("ASU") with campuses in Maricopa County, pursuant to A.R.S. 15-1601, 15-1625, and 15-1626;

(C) the owner and operator of its "Arizona State University Police Department" whose police officers are entitled to the protections of the Police Officers Bill of Rights, A.R.S. 38-1101 et seq, and are not at-will employees pursuant to AQ.R.S. 38-1103(A) and A.R.S. 41-745(C), and ASU Staff Personnel Manual, sections 202, 809, and 1101;

(D) the "employer" of the Plaintiffs as defined by 29 U.S.C. 794(d) and A.R.S. 41-1461(6) (a); and

(E) engaged in a "program or activity" as that term is defined and used in 29 U.S.C. 794(b)(1) and 29 U.S.C. 794(b)(2)(A), because ABOR received and used Federal financial assistance provided by the government of the United States for academic research, and for law enforcement and public safety functions carried out by the Arizona State University Police Department ("ASU PD"). 3. At all times material to this Complaint, the Plaintiffs were employed by ABOR as police officers by ASU PD the and

(a) "employees" as defined and used in A.R.S. 41-1461(5)(a);

(b) "employees" as defined and used in A.R.S. 41-1461(5)(a); and

(c) "law enforcement officers" as defined in used in A.R.S. 38-1101(8)(a).

4. All claims set forth herein arise under federal statutes and therefore this

Court has subject jurisdiction pursuant to 28 U.S.C. 1331, except for the two claims specified in paragraphs 6 and 7 infra.

5. All events alleged herein occurred within Maricopa County, Arizona and therefore the Phoenix division of the United States District for Arizona has jurisdiction and is the proper venue pursuant to 28 U.S.C. 1391(b)(1,2).

6. Plaintiff Cornfield has one claim against ABOR for age discrimination in violation of the Arizona Civil Rights Act, A.R.S. 41-1463(B)(1) and 41-1481. This claim is factually related to the other federal claims in this action and therefore this Court has supplemental jurisdiction pursuant to 28 U.S.C. 1367(a).

7. Plaintiff Parker has one claim for against ABOR for two violations of the Arizona Public Records Act, A.R.S. 39-121 et seq. This claim is factually related to the other federal claims in this action and therefore this Court has supplemental jurisdiction pursuant to 28 U.S.C. 1367(a).

8. The individual Defendants herein were all working in their capacities as officers of the ASUPD and acting under color of law when the events alleged herein occurred.

## 2. Fact Allegation In Support Of Claims

9. Plaintiff **Murphy** is a 22 year veteran law enforcement officer and was hired in 2002, by the ASU PD as a lateral police officer, ascending to the rank of Sergeant.

10. **Murphy** retired on March 31, 2015. When he retired, he told then ASU PD Police Chief Thompson (Defendant Michael Thompson) and then Assistant Chief Hardina (Defendant James Hardina) that he wanted to purchase from the ASU

PD his Glock service pistol, as provided for by A.R.S. 38-1115 and the customary practice of the ASU PD. Both Thompson and Hardina flatly refused this request for no lawful purpose other than retaliation against **Murphy** because **Murphy** had exercised his right to free speech with his repeated and continuing complaints (whistleblowing) to his ASU PD superiors about inadequate training to assure public safety and the safety of the police officers, and being ordered to engage in unwarranted and baseless internal investigations and further being told what outcomes or determinations he should reach in such "investigations", which retaliation also violated his constitutional right to equal protection since other non-whistleblower police officers were allowed to purchase their service pistols upon retirement.

11. Murphy's whistleblowing was well known to both Thompson and Hardina at the time his request to purchase the Glock was refused.

12. As the direct and proximate result of such refusal, **Murphy** has suffered emotional distress, inconvenience, and lost the use of the Glock weapon he was comfortable using when necessary.

13. **O'Hayer** suffered an on-the-job injury that left his right arm disabled to the point where he could no longer safely use a firearm, and received workers compensation benefits.

13. **O'Hayer** returned to work at the ASU PD after workers compensation leave, and worked for two months between April, 2014 and June 20, 2014.

14. **O'Hayer**'s injury forced him to retire from the ASU PD on June 20, 1014.

15. During the period that **O'Hayer** worked for the ASUPD in 2014, he was subject to discrimination based upon his disability and to retaliation for having become disabled and sought reasonable accommodations so he could perform his job. This on-the-job discrimination and retaliation was known and condoned by **O'Hayer**'s superiors at the ASU PD. It included, inter alia:

(A) Being the target of unwarranted internal investigations in which his rights under A.R.S. 38-1104 were violated, causing his stress and worry.

(B) Illegally altered his training records.

(C) Unnecessarily contacting him at home when he was not working, sometimes when he was sleeping.

(D) Being ignored and not responded to by superiors including Thompson and Hardina.

16**. Cornfield** was born in 1949.

17. **Cornfield** was employed by the ASUPD from May 8, 1995 until July 2, 2015.

18. **Cornfield** retired on July 2, 2015 because he was constructively discharged based upon hostility at the ASU PD based upon his age, which hostility was known to his supervisors. Such hostility included, inter alia:

(A) Being denied the use of a Segway vehicle for use on the job which use was allowed for all younger officers, which made the job harder by requiring unnecessary walking often in very hot weather.

(B) Being told by superiors that he should be planning for retirement when he did not plan any retirement'

(C) After being off work on medical leave, after he was cleared to return to work by both his treating physician and a physician designated by the ASU PD, he was not allowed to return for a lengthy period which adversely affected his pay and benefits.

19. Based upon his constructive discharge by the ASU PD, **Cornfield** filed a timely charge of age discrimination concurrently with the United States Equal Employment Opportunity Commission and the Arizona Civil Rights Division on June 12, 2015, which is EEOC charge #540-2015-02212. Pursuant to A.R.S. 41-1481(D), he has filed his charge of age discrimination in employment in violation of the Arizona Civil Rights Act [A.R.S. 41-1463(B)(1)] within one year of his constructive discharge.

20. In and before August, 2014, and continuing through 2015, there was an internet blog which was popular among the ASU community which included many comments by anonymous bloggers about public safety on the ASU campus and specifically the ASU PD, some of which were critical. That website is: "the Blog" https://network23.org/theintegrityreport/.

21. The disclosures on the blog did not violate any laws, but did include criticism of public officials.

22. Thompson was very angry about the blog because it included comments that were critical of the ASU PD and it appeared that some were "inside information".

23. Chief Thompson contacted the Arizona Department of Public Safety and arranged for that agency to conduct an investigation to determine whether **Cornfield, Linser**, or **Flynn** had contributed to this blog. The Flynn investigation occurred in August, 2014, and the Cornfield and Linser internal investigations occurred in March, 2015.

24. As the result of this investigation, the three Plaintiffs had to endure unwarranted internal investigations which they reasonably believed might have been criminal investigations as well and questioning which were conducted in violation of their rights under A.R.S. 33-1104 and 1105. They suffered emotional

distress and worry about their jobs and reasonably believed that they were suspected by Thompson of being "malcontents".

25. These internal investigations had a chilling effect on these three Plaintiffs rights of free speech, making them refrain from future protected speech on matters of public concern about ASU and the ASU PD.

26. **Parke**r was employed by the ASU PD from August 25, 2008 until January 20, 2014.

25. After being hired by the ASU PD, **Parker** joined a police union, the University and College Law Enforcement Officers Association, which grew to have approximately thirty ASU PD employees as members. He soon became vice-president and then was elected president, a position he held for approximately four years before he left the ASU PD.

26. In his union leadership position, **Parker** often clashed with the Chief and other high ranking officers of the ASU PD, including Defendant Louis Scichilone in the course of representing the interests of the union members, both collectively, and as their union representative during internal investigation. On numerous occasions, the Chief and supervisors made hostile statements about the union and his work on its behalf and openly showed hostility to **Parker** in an effort to discourage other employees either not to join the union or to resign from it.

**Parker's** union activities were constitutionally protected free speech and freedom of association.

27. Defendant Louis Scichilone who was the Commander in charge of (and custodian of) all ASU PD records, internal investigation files, and personnel records for the ASU PD in 2014 when Parker left the ASU PD. He was not a union member and had expressed his hostility to both **Parker** and the union on numerous occasions.

28. After **Parker** left the ASU PD, he was hired as an investigator by the Arizona Attorney General. After being hired, that new employer conducted a further background check on Parker and contacted Cdr. Scichilone to find out exactly what internal investigation had been done at the ASU PD on **Parker**. Cdr. Scichilone responded by providing to the Attorney General's office a false report indicating there had been six separate internal investigations into **Parker**, which was false since there had been only four and all were minor and he was exonerated on two of them.

29. As the result of this false and defamatory information from Scichilone, the Attorney General ("AG") determined that **Parker** had misrepresented his work history at the ASU PD. Parker eventually had to leave his job with the Attorney General because of an on-the-job injury. When **Parker** left the AG's office, the

AG reported to AZPOST that he was not eligible for rehire because he had misrepresented his past work history (number of internal investigations while employed at ASU PD) when the AG had hired him. This has caused AZPOST to commence decertification of **Parker** as a law enforcement officer and made him unemployable in that field.

30. **Parker** did not become aware of this false report and defamation by Louis Scichilone until later in 2015 when he was learned about the AZPOST decertification proceeding that had been commenced.

31. Pursuant to A.R.S. 39-121 et seq., **Parker** submitted separate written document inspection and copying requests to (1) the ASU Human Resources office on June 16, 2015 for all ASU employees, and (2) the ASU PD (Cdr. Louis Scichilone and then Chief Michael Thompson though ASU General Counsel) on June 25, 2015, seeking an opportunity to inspect his personnel files and in particular all records of all internal investigations by the ASU PD in which he was the subject of the investigation.

32. In response to **Parker's** request to the ASU PD (Scichilone) provided only some non-responsive information.

33. In response to **Parker's** request to the ASU Human Resources office, that office has provided nothing at all.

34. Despite **Parker's** repeated follow up requests on his two public records requests, ASU and Scichilone have failed and refused to provide the response of inspection or records requested, in deliberate violation of A.R.S. 39-212 et seq.

35. These public records refusals have caused damages to **Parker** since he has needed them to prove to the Attorney General that he was honest when he applied, to be able to avoid de-certification as a law enforcement officer by AZPOST, and to protect his reputation in the criminal justice community.

36. The actions of Scichilone alleged herein were motivated by an intent to retaliate against and punish **Parker** for his union leadership at the ASU PD.

37. **Mansfield** was first employed by the ASU PD as a dispatcher, and then became a police officer on March 21, 2014. He remains employed in that position at the present time.

38. Chief Thompson and a majority of the supervisors at the ASU PD are, and have been for years, very active members of the LDS (Mormon) church.

39. **Mansfield** had been an active member of the Mormon Church until 2009 when he decided to leave the Church altogether, which fact was known to Thompson.

40. Prior to February 18, 2016, Mansfield had made a request to examine his ASU PD personnel files.

41. On February 18, 2016, Chief Thompson made a special trip out to the ASU Polytechnic campus, where **Mansfield** was working to speak to him about his request to view his personnel file.

42. In that on-the-job conversation at the ASU Polytechnic campus, Chief Thompson said to **Mansfield** the following:

A. The spirit of God had inspired him to come and speak with Mansfield that day.

B. Mansfield would not be allowed to view his ASU PD employment file unless he agreed that he would not hire an attorney.

C. Mansfield was asked several times whether or not he was recording the conversation.

D. If Mansfield would allow the Mormon missionaries over to his home to explore their lessons, in order to come closer to the one true faith, the Chief (1) would hold a special meeting with Command Staff, for Mansfield's sake, and tell them to stop making Mansfield their "project.", and (2) any written documents would thereafter have to be approved by the Chief (himself) before it would be authorized to enter into Mansfield's file, and he would not allow anything into his file unless it reflected well on the department

E. Mansfield could only view his employment records, but would not be able to make any copies, or take pictures of anything; however, Mansfield would be authorized to take notes, indicating that Thompson would not comply with A.R.S. 39-121 et seq.

F. The Chief bore his testimony of the Mormon Church, "the restored Gospel of Jesus Christ, and in the Prophet Joseph Smith"; and encouraged Mansfield to come into the "fullness of the Gospel of Jesus Christ".

43. During that Chief Thompson-Mansfield meeting and afterwards, **Mansfield** expressed no interest whatsoever in the Mormon Church or Thomson's urging him to meet with Mormon missionaries in his home. Since that time Thompson has been openly hostile to **Mansfield**, and the following adverse actions have occurred against Mansfield:

A. On February 24, 2016, Thompson changed a letter of instruction that Mansfield had previously been issued, and upgraded it to a level one reprimand.

B. On April 30, 2016, ASU PD Sgt. Jason Latella, sent Mansfield an email telling him that his performance was unacceptable, and then on May 21, 2016, Latella sent a very embarrassing and unprofessional e-mail to his squad to ridicule

Mansfield.

C. On June 9, 2016, Mansfield was placed on a performance improvement plan (PIP) based upon false and derogatory information furnished by Latella.

D. On August 6, 2016, Mansfield was placed on administrative leave and all of his ASU accounts were disabled, including his student accounts, access to his tax records, and other educational records.

44. **Mansfield** complained to Thompson the four events listed in the preceding paragraph, but Thompson was hostile and unconcerned and took no remedial action.

45. The conduct of Thompson with respect to **Mansfield** alleged herein was retaliation against Mansfield for his exercise of his federal constitutional rights to freedom of religion, freedom of association, and his federal right to not be subject to religious discrimination in employment [42 U.S.C. 2000e-2(a)] or retaliation for having exercised such right [42 U.S.C. 2000e-3(a)].

46. Plaintiff **Goodwin** (a non LDS church member) was fired by Chief Thompson effective October 28, 2015, just two weeks after Chief Thompson had asked him If he wanted to learn more about the Mormon religion and Goodwin said he was not interested.

47. This conduct of Thompson with respect to **Goodwin** alleged herein was retaliation against Goodwin for his exercise of his federal constitutional rights to freedom of religion, freedom of association, and his federal right to not be subject to religious discrimination in employment [42 U.S.C. 2000e-2(a)] or retaliation for having exercised such right [42 U.S.C. 2000e-3(a)].

### 3. Demand For Trial By Jury On All Matters

The Plaintiffs demand a trial by jury pursuant to the Seventh Amendment to the United States Constitution and FRCP Rule 38(a,b) on all claims and matters except for Parker's claim under A.R.S. 39-121 et seq.

### 4. Separate Claims and Relief Requested

Based upon the foregoing, the Plaintiffs request the following relief against the Defendants:

**Count One**: Age discrimination in violation of A.R.S. 41-1463(B)(1)

Plaintiff: Charles Cornfield

Defendant: ABOR

Relief requested:

1. Injunctive relief pursuant to A.R.S. 41-1481(G)

2. Attorneys' fees pursuant to A.R.S. 41-1481(J)

3. Taxable costs pursuant to 29 U.S.C. 1920, FRCP Rule 54(d)(1) and LRCiv 54.1

**Count Two**: 42 U.S.C. 1983-Retaliation for perceived exercise of free speech

Plaintiff: Charles Cornfield

Defendant: Thompson

Relief requested:

1. Prospective injunctive relief

2. Declaratory relief

3. Reasonable attorneys' fees and expert fees incurred herein pursuant to 42 U.S.C. 1988 (b,c), FRCP Rule 54(d)(2) and LRCiv Rule 54.2

4. Taxable costs pursuant to 29 U.S.C. 1920, FRCP Rule 54(d)(1) and LRCiv 54.1

**Count Three**: 42 U.S.C. 1983-Retaliation for perceived exercise of free speech

Plaintiff: Benjamin Robert Flynn

Defendant(s): Thompson

Relief requested:

1. Prospective injunctive relief

2. Declaratory relief

3. Reasonable attorneys' fees and expert fees incurred herein pursuant to 42 U.S.C. 1988 (b,c), FRCP Rule 54(d)(2) and LRCiv Rule 54.2

4. Taxable costs pursuant to 29 U.S.C. 1920, FRCP Rule 54(d)(1) and LRCiv 54.1

**Count Four:** 42 U.S.C. 1983-Retaliation for exercise of free speech, freedom of religion, and religious discrimination retaliation

Plaintiff: Alexander J. Goodwin

Defendant: Thompson

Relief requested:

1. Prospective injunctive relief

2. Declaratory relief

3. Reasonable attorneys' fees and expert fees incurred herein pursuant to 42 U.S.C. 1988 (b,c), FRCP Rule 54(d)(2) and LRCiv Rule 54.2

4. Taxable costs pursuant to 29 U.S.C. 1920, FRCP Rule 54(d)(1) and LRCiv 54.1

**Count Five:** 42 U.S.C. 1983-Retaliation for perceived exercise of free speech

Plaintiff: Bernard Linser

Defendant: Thompson

Relief requested:

1. Prospective injunctive relief

2. Declaratory relief

3. Reasonable attorneys' fees and expert fees incurred herein pursuant to 42 U.S.C. 1988 (b,c), FRCP Rule 54(d)(2) and LRCiv Rule 54.2

4. Taxable costs pursuant to 29 U.S.C. 1920, FRCP Rule 54(d)(1) and LRCiv 54.1

**Count Six:** 42 U.S.C. 1983-Retaliation for exercise of free speech, freedom of religion, and religious discrimination retaliation

Plaintiff: Matthew Mansfield

Defendant: Thompson

Relief requested:

1. Prospective injunctive relief

2. Declaratory relief

3. Reasonable attorneys' fees and expert fees incurred herein pursuant to 42 U.S.C. 1988 (b,c), FRCP Rule 54(d)(2) and LRCiv Rule 54.2

4. Taxable costs pursuant to 29 U.S.C. 1920, FRCP Rule 54(d)(1) and LRCiv 54.1

**Count Seven**: 42 U.S.C. 1983-Retaliation for exercise of right to free speech

Plaintiff: Patrick Murphy

Defendants: Thompson and Hardina

1. Prospective injunctive relief

2. Declaratory relief

3. Reasonable attorneys' fees and expert fees incurred herein pursuant to 42 U.S.C. 1988 (b,c), FRCP Rule 54(d)(2) and LRCiv Rule 54.2

4. Taxable costs pursuant to 29 U.S.C. 1920, FRCP Rule 54(d)(1) and LRCiv 54.1

**Count Eight**: Disability discrimination in violation of the Rehabilitation Act, 29 U.S.C. 794 and 794a

Plaintiff: William J. O'Hayer

Defendant: ABOR

Relief requested:

1. Compensatory damages and general damages

2. Injunctive relief as authorized by 29 U.S.C. 794a(a)(2)

3. Reasonable attorneys' fees incurred herein pursuant to 29 U.S.C. 794a(b), FRCP Rule 54(d)(2) and LRCiv Rule 54.2

4. Taxable costs pursuant to 29 U.S.C. 1920, FRCP Rule 54(d)(1) and LRCiv 54.1

**Count Nine**: 42 U.S.C. 1983-Retaliation for perceived exercise of free speech and freedom of association (police union leadership)

Plaintiff: Matthew V. Parker

Defendants: Scichilone, Thompson

Relief requested:

1. Prospective injunctive relief

2. Declaratory relief

3. Reasonable attorneys' fees and expert fees incurred herein pursuant to 42 U.S.C. 1988 (b,c), FRCP Rule 54(d)(2) and LRCiv Rule 54.2

4. Taxable costs pursuant to 29 U.S.C. 1920, FRCP Rule 54(d)(1) and LRCiv 54.1

**Count Ten:** Violation of Arizona Public Records Act, A.R.S. 39-121 et seq.

Plaintiff: Matthew V. Parker

Defendant: ABOR

Relief requested:

1. Production of all records sought as injunctive or special action relief

2. Damages pursuant to A.R.S. 39-121.02(C).

3. Attorneys' fees and legal costs pursuant to A.R.S. 39-121.02(B)

4. Taxable costs pursuant to 29 U.S.C. 1920, FRCP Rule 54(d)(1) and LRCiv 54.1

Dated this 25th day of August, 2016.

LAW OFFICES OF DAVID W. DOW

By:     /s/ David W. Dow
        David W. Dow

Original e-filed this 25th day of August, 2016.

**CERTIFICATE OF SERVICE**

I hereby certify that on August 25, 2016, I electronically transmitted the attached

document to the Clerk's Office using the CM/ECF System for filing. I further certify that on August 26, 2016, I will serve this pleading by regular mail on the opposing counsel:

Daniel Dowd
Cohen Kennedy Dowd & Quigley, P.C.
The Camelback Esplanade I
2425 East Camelback Road, Suite 1100
Phoenix, Arizona 85016

By: */s/ David W. Dow*