COHEN DOWD QUIGLEY
The Camelback Esplanade One
2425 East Camelback Road, Suite 1100
Phoenix, Arizona 85016
Telephone 602•252•8400

Daniel G. Dowd (012115)
Email:  ddowd@CDQLaw.com
Rebecca van Doren (019379)
Email:  rvandoren@CDQLaw.com
Lauren M. Koloseike (029860)
Email:  lkoloseike@CDQLaw.com
   Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Charles Cornfield, Benjamin Robert Flynn, Alexander J. Goodwin, Bernard Linser, Matthew Mansfield, Patrick Murphy, William J. O'Hayer, and Matthew V. Parker, <br><br> Plaintiffs, <br><br> vs. <br><br> The Arizona Board of Regents, a body politic and agency of the State of Arizona, Michael Thompson, James Hardina, and Louis Scichilone, <br><br> Defendants. | Case No:  2:16-cv-00924-PHX-ROS <br><br> **DEFENDANTS' MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11(c) AND 28 U.S.C. § 1927** <br><br> (Assigned to the Honorable Roslyn O. Silver) <br><br> **Oral Argument Requested** |

Defendants Michael Thompson, James Hardina, and Louis Scichilone (collectively, the "Individual Defendants") and the Arizona Board of Regents ("ABOR") respectfully request that the Court impose monetary sanctions against Plaintiffs Charles Cornfield, Benjamin Flynn, Bernard Linser, William O'Hayer, Matthew Parker, and Matthew Mansfield, and their counsel, David W. Dow, pursuant to Fed. R. Civ. P. 11(c) for their improper prosecution of the frivolous and unfounded claims contained in Plaintiffs' Third Amended Complaint ("TAC") (Doc. 24), and against Mr. Dow under 28 U.S.C. § 1927 for multiplying these proceedings vexatiously and in bad faith.[1]

Defendants fully respect the serious nature of the penalties sought in this Motion and the appropriately stringent standard for imposing sanctions under Rule 11 and Section 1927. However, Plaintiffs and their counsel have long engaged in a vindictive and mean-spirited campaign of harassment against the Individual Defendants and the Arizona State University Police Department ("ASU PD") by which Plaintiffs were, or are, employed. Plaintiffs have been indefatigable in their efforts to disrupt and interfere with the operations of the ASU PD, to the direct detriment of the University community that the ASU PD serves, and are now trying to use the federal District Court as a medium to carry out their vendetta. In addition, Plaintiffs' abandonment of their prior claims and assertion of new – but equally meritless – allegations in the Third Amended Complaint demonstrates Plaintiffs' desperation to keep their public onslaught against the ASU PD alive. Plaintiffs and their counsel have fully earned sanctions for their irresponsible pleading and abuse of the judicial system.

**MEMORANDUM**

## I.   <u>Relevant Factual and Procedural History</u>.

On February 17, 2016, Plaintiffs initiated this action with a Complaint filed in Maricopa County Superior Court. On February 26, 2016, without having served the Complaint, Plaintiffs filed and served an Amended Complaint, which added two additional

---

[1]   Mr. Goodwin has stipulated to the dismissal of his claim against Defendants with prejudice and thus is no longer subject to sanctions under Rule 11. As Mr. Murphy has not filed a Notice of Dismissal indicating his intent not to proceed with this action, sanctions are not being sought against Mr. Murphy at this time.

plaintiffs and multiple new factual allegations. As the primary claims asserted arose under federal law, Defendants removed the action to federal court. [*See* Doc. 1.] Upon review of the Amended Complaint, Defendants immediately recognized that it was unfounded and could not be asserted in good faith. Accordingly, undersigned counsel sent a lengthy letter to Mr. Dow on April 13, 2016 detailing the bases and supporting legal authority upon which Defendants would seek dismissal and sanctions against Plaintiffs and their counsel if the claims were not promptly withdrawn. [Declaration of Daniel G. Dowd ("Dowd Decl."), attached as Exhibit A, ¶ 3.] Defendants also scheduled a meet and confer with Mr. Dow, pursuant to this Court's April 7, 2016 Order, to review with Mr. Dow the pleading failures and afford Plaintiffs the opportunity to amend or withdraw before Defendants filed their Motion to Dismiss. [*Id.*, ¶ 4.]

Counsel for Defendants sent both the letter and a draft Motion to Dismiss to Mr. Dow prior to the conference. [Dowd Decl., ¶ 5.] Mr. Dow responded that Plaintiffs intended to amend their complaint to address some of the problems that Defendants identified. [*Id.*, ¶ 6.] During the telephone conference, Mr. Dow confirmed Plaintiffs' intent to amend the pleading, and he declined to review the specific deficiencies in the Amended Complaint. [*Id.*, ¶ 7.] Based on Mr. Dow's representations, Defendants stipulated to a date by which Plaintiffs could amend their pleading. [*Id.*, ¶ 8.]

On April 25, 2016, Plaintiffs filed their Second Amended Complaint. [*See* Doc. 10.] The new filing not only failed to correct any of the substantive defects of which Mr. Dow had been placed on specific written notice, but compounded the problem by adding additional frivolous and patently time-barred allegations. Defendants requested another "meet and confer" before seeking both dismissal and sanctions. [Dowd Decl., ¶ 9.] During the subsequent May 6, 2016 conference, Mr. Dow insisted – without authority – that his claims were properly asserted. He ignored the abundant law Defendants cited to the contrary. [*Id.*, ¶¶ 10-11.]

On May 9, 2016, Defendants filed their Motion to Dismiss based on the same grounds they had repeatedly identified for Mr. Dow. [*See* Doc. 12.] On May 31, 2016,

Plaintiffs responded.  [*See* Doc. 17.]  In that Response, Mr. Dow made no effort to address the deficiencies of the Second Amended Complaint, failed to acknowledge the wealth of binding case law cited in the Motion, and failed to offer any legal authority that actually supported Plaintiffs' claims.  Instead, Mr. Dow simply repeated the refrain that Plaintiffs' claims were somehow sufficient to meet the pleading standards of the Federal Rules of Civil Procedure.  He also raised new claims in the Response that are not found in the Second Amended Complaint.

Based on Mr. Dow and his clients' stubborn refusal to acknowledge the fatal flaws in their pleadings, on July 5, 2016, Defendants served on Mr. Dow a Motion for Sanctions pursuant to Fed. R. Civ. P. 11(c)(2).  [Dowd Decl., ¶ 13.]  However, on July 21, 2016, before the expiration of the 21-day safe harbor period, this Court dismissed the Second Amended Complaint in its entirety.  As Defendants had warned, the Court found that "none of Plaintiffs' claims are presently viable."  [Order dated July 21, 2016 (Doc. 21) ("Order"), p. 3.] Although the Court granted Plaintiffs leave to replead their federal law claims, it cautioned that any amended complaint "must be a substantial improvement for Plaintiffs to have hope of proceeding."  [Order, p. 12.]  Adopting language from another action involving Mr. Dow, the Court further advised Mr. Dow (who has been practicing law for 34 years) that he "may wish to consult with experienced federal court practitioners concerning the requirements of federal pleading."  [*Id.*]

On September 25, 2016, Plaintiffs, again through Mr. Dow, filed a Third Amended Complaint.  Although the new pleading was slightly more intelligible, Plaintiffs' fourth effort made two realities abundantly clear:  First, Plaintiffs had <u>no</u> factual basis for claims they had attempted to assert in their three prior pleadings, as those claims were largely abandoned. Second, the new claims that Plaintiffs attempt to assert also have no legal or factual basis and could not have been filed in good faith.

3

## II. The Third Amended Complaint Does Not Comply with Rule 11 and Warrants Sanctions Against Plaintiffs and Their Counsel.

### A. Applicable Legal Standard.

Rule 11(a), Fed. R. Civ. P., provides, *inter alia*, that by signing a paper presented to the Court, the party signing it "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:  (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; [and] (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."   Rule 11 applies to attorneys and parties alike.  *See Patterson v. Apple Computer, Inc.*, 256 F. App'x 165, 168 (9th Cir. 2007) (affirming Rule 11 sanctions imposed against plaintiff and her counsel).

Under Rule 11, "sanctions must be imposed on the signer of a paper if either a) the paper is filed for an improper purpose, or b) the paper is 'frivolous.'" *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (*citing Zaldivar v. City of Los Angeles*, 780 F.2d 823, 832 (9th Cir. 1986).  The term "frivolous" denotes "a filing that is both baseless and made without a reasonable and competent inquiry" based on "the information reasonably available to the party at the time of filing."  *Townsend*, 929 F.2d at 1362, 1366 n.5.  Accordingly, a complaint based on allegations that plaintiffs knew or should have known to be false is sanctionable. *See, e.g., Barrett-Bowie v. Select Portfolio Servicing, Inc.*, 631 F. App'x 219, 220 (5th Cir. 2015) (affirming award of sanctions where plaintiffs filed "pleadings containing baseless factual allegations"); *Egan v. Pineda*, 808 F.3d 1180, 1181 (7th Cir. 2015) (affirming imposition of sanction where complaint contained false allegation of sexual assault); *Chien v. Skystar Bio Pharm. Co.*, 256 F.R.D. 67, 74 (D. Conn. 2009), *aff'd*, 378 F. App'x 109 (2d Cir. 2010) (imposing Rule 11 sanctions where "both the original and amended complaints contained material falsehoods").

"[T]he central purpose of Rule 11 is to deter baseless filings in district court and thus, consistent with the Rules Enabling Act's grant of authority, streamline the administration

4

and procedure of the federal courts." *Jones v. Sanan*, 2012 WL 715633 (D. Ariz. Mar. 6, 2012) (*quoting Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)). In determining whether sanctions are appropriate, courts apply a standard of "objective reasonableness for determinations of frivolousness as well as of improper purpose." *Woodrum v. Woodward County, Okla.*, 866 F.2d 1121, 1127 (9th Cir. 1989). The fact that the inquiry is objective, rather than subjective, means that the Court need not inquire into Plaintiffs' intentions when evaluating their baseless allegations. Accordingly, Defendants are not required to show bad faith to support their request for sanctions, and Plaintiffs cannot escape sanctions by arguing good intentions. *See, e.g., In re DeVille*, 361 F.3d 539, 548 (9th Cir. 2004) (holding that Rule 11 does not require a showing of subjective bad faith); William W Schwarzer, *Sanctions Under the New Federal Rule 11-A Closer Look*, 104 F.R.D. 181, 187 (1985) ("There is no room for a pure heart, empty head defense under Rule 11.").

As detailed below, Plaintiffs' Third Amended Complaint contains multiple allegations that are not only insufficient to state a claim, but are actually false and easily disproved. The Complaint can only have been filed for the improper ulterior purpose of perpetuating Plaintiffs' harassment of Defendants and interference with the operations of the ASU PD.

**B. The Third Amended Complaint is Deficient and Contains Multiple False Allegations.**

Plaintiffs' TAC purports to assert ten distinct claims:

- Count 1, age discrimination in violation of A.R.S. § 41-1463(B)(1), asserted by Plaintiff Cornfield against ABOR;

- Count 2, 3 and 5, violation of 42 U.S.C. § 1983-retaliation for perceived exercise of free speech, asserted by Plaintiffs Cornfield, Flynn and Linser against Defendant Thompson;

- Count 4 and 6, violation of 42 U.S.C. § 1983-retaliation for exercise of free speech, freedom of religion, and religious discrimination retaliation, asserted

1    by Plaintiffs Goodwin and Mansfield against Defendant Thompson;[2]

2    – Count 7, violation of 42 U.S.C. § 1983-retaliation for exercise of right to free

3    speech, asserted by Plaintiff Murphy against Defendants Thompson and

4    Hardina;

5    – Count 8, disability discrimination in violation of the Rehabilitation Act, 29

6    U.S.C. 794 and 794a, asserted by Plaintiff O'Hayer against ABOR;

7    – Count 9, violation of 42 U.S.C. § 1983-retaliation for perceived exercise of

8    free speech and freedom of association, asserted by Plaintiff Parker against

9    Defendants Scichilone and Thompson; and

10    – Count 10, violation of Arizona Public Records Act, A.R.S. 39-121 et seq.,

11    asserted by Plaintiff Parker against ABOR.

12    The dispositive flaws in each of these claims detailed in Defendants' Motion to

13 Dismiss filed on October 14, 2016 should have been obvious after even a modicum of due

14 diligence. For example, Plaintiff Cornfield purports to assert an age discrimination claim

15 under state law. However, Cornfield asserted that claim in the Second Amended Complaint,

16 and the court dismissed it with prejudice and without leave to amend. [Order, p. 4

17 ("Plaintiffs' state law claims will be dismissed without leave to amend.").] Cornfield's

18 reassertion of that claim flatly violates the Court's unambiguous Order.

19    Plaintiffs Mansfield and Goodwin allege that on isolated occasions, Defendant

20 Thompson offered to introduce them to his Mormon faith. Plaintiffs then allege that they

21 were later disciplined or terminated, and claim retaliation without a single fact to connect the

22 two events. Moreover, Mansfield and Goodwin try to rely on Title VII of the Civil Rights

23 Act of 1964 as the source of the rights that were violated, ignoring well-settled Ninth Circuit

24 law prohibiting the use of Section 1983 to vindicate rights under Title VII. *See Learned v. City*

25

26

27 [2]    As noted above, this Motion does not seek sanctions against Plaintiffs Goodwin or Murphy. However, the Motion addresses the deficiencies in these Plaintiffs' claims because

28 sanctions are being sought against their former counsel, David Dow, who prepared and filed the Third Amended Complaint.

1 *of Bellevue*, 860 F.2d 928, 933 (9th Cir. 1988).[3]

2     Plaintiffs Parker and Murphy both attempt to assert free speech retaliation claims,

3 without adequately alleging that the cited speech is actually protected by the First

4 Amendment. O'Hayer asserts a new disability retaliation claim that is both time-barred and

5 lacks a single fact to support 1) that he suffered an adverse employment action or 2) that the

6 conduct he does allege was motivated by hostility toward his disability. And, Parker's claim

7 under the Arizona Public Records Act is improper, as such a claim cannot be brought in

8 federal court, and his request for damages is barred by Parker's failure to serve the Notice of

9 Claim required by A.R.S. § 12-821.01.

10     None of the arguments made in the Motion to Dismiss are novel or based on

11 unsettled law. The obvious deficiencies in the Third Amended Complaint establish a

12 violation of Rule 11(b)(2) by both Plaintiffs and their counsel.[4]

13     Moreover, beyond the legal deficiencies, Plaintiffs try to manufacture claims by

14 making provably false and deliberately misleading allegations in the Third Amended

15 Complaint. For example, Plaintiff Murphy alleges that he retired on March 31, 2015. [TAC,

16 ¶ 10.] However, Murphy actually retired on April 1, <u>2013</u>, two years earlier, making his

17 Section 1983 claim *per se* untimely. *See* A.R.S. § 12-542; *McDougal v. Cty. of Imperial*, 942 F.2d

18 668, 672 (9th Cir. 1991) (holding that claims under § 1983 are subject to forum state's

19 limitation period for personal injury actions). Mr. Dow was well aware of Murphy's

20 retirement date, as it was specifically identified in a draft Motion for Sanctions served on Mr.

---

21    [3]   Mansfield and Goodwin similarly cannot assert claims under Title VII directly,

22 because they never filed a charge with the Equal Employment Opportunity Commission ("EEOC") before filing suit. *See B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir.

23 2002) ("Under Title VII, a plaintiff must exhaust her administrative remedies by filing a timely charge with the EEOC, or the appropriate state agency, thereby affording the agency

24 an opportunity to investigate the charge.").

   [4]   Rule 11(b)(2) states that by signing, filing or later advocating a pleading, the attorney

25 or party represents that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing

26 law or for establishing new law." Mr. Dow's withdrawal subjects Plaintiffs, who are now unrepresented, to sanctions under Rule 11(b)(2) for "later advocating" the pleading by

27 seeking to avoid its dismissal. *See, e.g., In re Star Gas Sec. Litig.*, 745 F. Supp. 2d 26, 39 (D. Conn. 2010) (holding that plaintiffs violated Rule 11 when they "reasserted their frivolous

28 allegations in their opposition to Defendants' motion to dismiss and during oral argument").

7

COHEN DOWD QUIGLEY

1  Dow on July 5, 2016.[5]  [Dowd Decl., ¶ 13.]  Yet, he included the false assertion in the Third

2  Amended Complaint.

3      Plaintiffs Cornfield and Linser allege that they suffered "emotional distress" when

4  Chief Thompson initiated an investigation to determine whether they had contributed to an

5  internet blog that was critical of the ASU PD.  [TAC, ¶ 23.]  They further alleged that they

6  "had to endure unwarranted internal investigations which they reasonably believed might

7  have been criminal investigations."  [TAC, ¶ 24.]  However, Cornfield and Linser each

8  signed documents prior to their interviews acknowledging that it was an administrative

9  investigation for which they were being interviewed as witnesses only.  [*See* Declaration of

10  Michael Thompson ("Thompson Decl."), attached as Exhibit B, ¶ 7.][6]

11      Plaintiff Cornfield alleges that he was "constructively discharged" from his

12  employment based on hostility toward his age, which requires the plaintiff to have endured

13  "working conditions so difficult that a reasonable person in the employee's position would

14  feel compelled to resign." *West v. Salt River Agr. Imp. & Power Dist.*, 179 Ariz. 619, 625, 880

15  P.2d 1165, 1171 (Ct. App. 1994).  As noted in the Motion to Dismiss, the three isolated

16  incidents Cornfield cites are both insufficient to meet this high standard and have no

17  apparent relation to his age.[7]  In addition, however, Cornfield asserted this claim while

18  knowing full well that 1) he had notified the ASU PD of his intent to retire on February 13,

19  2015, nearly five months before he actually left the department, and 2) he admitted that his

20  use of a Segway, one of the alleged deprivations used to support his age discrimination claim,

21  had been restored. [Thompson Decl., ¶¶ 6, 8.]  These facts absolutely refute Cornfield's

22  allegations in the Third Amended Complaint, and demonstrate that the "constructive

23

24  [5]   Defendants did not file that version of their Motion for Sanctions because the Court
granted their Motion to Dismiss during the 21-day safe harbor period set forth in Fed. R.

25  Civ. P. 11(c). [Dowd Decl., ¶ 14.]

26  [6]   In contrast, the investigation that involved Plaintiff Flynn actually was a criminal
investigation, which Cornfield knows because he was also interviewed in connection with
that investigation. [*See* Thompson Decl., ¶ 4.]

27  [7]   Cornfield alleges that ABOR discriminated against him by 1) not letting him ride a

28  Segway; 2) suggesting that he retire; and 3) keeping him on medical leave longer than
necessary.  [TAC, ¶ 18.]

discharge" claim is not only baseless, but was asserted in bad faith.

Plaintiff Goodwin alleges that he was "fired by Chief Thompson effective October 28, 2015, just two weeks after Chief Thompson had asked him if he wanted to learn more about the Mormon religion and Goodwin said he was not interested." Goodwin, who was actually terminated effective December 4, 2014, fails to mention that he was terminated after a lengthy pre-termination process, including a hearing before a University Hearing Officer, based on substantial misconduct in which Goodwin engaged in September 2014, which included using his police vehicle to chase police aides who were driving a cart, causing an accident, and then being deliberately deceptive during the investigation of the incident. [Thompson Decl., ¶ 9.] Even accepting as true Goodwin's allegation that Thompson "asked him if he wanted to learn more about the Mormon religion" two weeks before Goodwin's termination, the termination process based on Goodwin's misconduct was already well under way by that time.

Plaintiff Parker alleges that Defendant Scichilone falsely reported to the Arizona Attorney General that there had been six internal investigations into Parker's conduct, when there had actually been only four. [TAC, ¶ 28.] However, ASU PD records demonstrate that there were, in fact, <u>six</u> internal investigations targeting Parker. [Declaration of Amanda Nevarez ("Nevarez Decl."), attached as Exhibit C, ¶ 9.] Parker requested and received a list of these six investigations in January 2016, before this lawsuit was ever filed, and thus his allegation that Scichilone made any inaccurate statement is a deliberate falsehood. [*Id.*] Parker's representation to the Court that ASU and the ASU PD, through Scichilone, did not respond fully to his public records requests is also false. The responses to both requests were actually handled by Amanda Nevarez, ASU PD's Police Records Supervisor. In response to both requests, Ms. Nevarez either provided Parker with copies of the records or invited him to review the records and select those that he wanted copied.[8] [*Id.*, ¶¶ 4-8.]

---

[8] Parker alleges that he submitted two public records requests dated June 15, 2015 and June 25, 2015, and that one was submitted to the ASU Human Resources Office and the other was sent to ASU PD. [TAC, ¶ 31.] He actually submitted both requests on June 25, 2015 to the ASU Office of General Counsel/Custodian of Records. Both were dated June 26, 2015. [Nevarez Decl., ¶ 2.]

COHEN DOWD QUIGLEY

Finally, Parker references "the Chief" in connection with his contention that during his employment with the ASU PD, he clashed with his supervisors over his union activities. [TAC, ¶ 26 ("In his union leadership position, Parker often clashed with the Chief and other high ranking officers of the ASU PD").] By naming Thompson as a Defendant on this claim, Parker deliberately implies that Thompson was Chief at some point between August 2008 and January 2014, when Parker was employed by the ASU PD. [*See id.*] However, Parker is fully aware that Thompson did not become Chief of the ASU PD until <u>after</u> Parker retired. [*See* Thompson Decl., ¶ 2.] Parker and Mr. Dow deliberately drafted the Third Amended Complaint to mislead the Court into erroneously assuming that Thompson is "the Chief" referenced in Parker's allegations.

These false and misleading allegations are not inadvertent. Rather, they represent a carefully orchestrated effort to try to plead claims that will withstand a motion to dismiss, regardless of the fact that the claims are fictitious. As mentioned above, this action is a key element of Plaintiffs' multi-faceted attack on the ASU PD. For several years, a group of disgruntled employees and former employees have relentlessly pursued a defamatory, profane, and personal attack on police department personnel and ASU PD administrators on a publicly-accessible internet website.[9] In June 2016, these same individuals attempted to disrupt the 2016 International Association of College Law Enforcement Administrators ("IACLEA") being hosted by the ASU PD, by sending an inflammatory email (from an anonymous email address) to attendees from universities all over the country. [Thompson Decl., ¶ 10.] The first link in the email is to a video in which four of the Plaintiffs appeared on a television news program to discuss this lawsuit. To gain publicity, those Plaintiffs falsely stated in that appearance that the lawsuit was based on the ASU PD having

---

[9]      Although none of the individuals posting on the website have the courage to identify themselves, the fact that Plaintiffs are involved is obvious from a post that solicits contributions to fund this lawsuit and provides contact information for Plaintiffs' (now former) counsel. *See* https://network23.org/theintegrityreport/2016/04/30/contribute-to-the-lawsuit-against-the-arizona-state-university-police-department-boost-public-safety-integrity-2/.

improperly altered its crime statistics in violation of the Clery Act.[10]  In addition, Plaintiff Mansfield, who is still employed by the ASU PD, has served dozens of internal complaints against various ASU PD officers and administrators.  [Thompson Decl., ¶ 11.]  And, the posts on the so-called "Integrity Report" continue, and include amateurish videos in which the posters intersperse images and video and audio recordings of Defendants and news reports about this lawsuit with clips from television shows and movies.  [Thompson Decl., ¶ 12.]  All of this conduct is specifically intended to harass, defame and humiliate ABOR, the Individual Defendants, and the ASU PD as a whole.  There can be no doubt that Plaintiffs and Mr. Dow filed the Third Amended Complaint for the purpose of improperly prolonging this litigation and creating a medium to intensify the barrage against the ASU PD.  Sanctions under Fed. R. Civ. P. 11(c) are entirely appropriate.

**III.**   **Mr. Dow's Conduct Warrants Sanctions under 28 U.S.C. § 1927.**

  **A.**   **Applicable Legal Standard.**

Under 28 U.S.C. § 1927, any attorney who "so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  Section 1927 sanctions may be imposed if the Court finds that the attorney acted in bad faith.  *See Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015) (*quoting New Alaska Dev. Corp v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989)).  "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument."  *New Alaska*, 869 F.2d at 1306.  A finding of bad faith may also be supported by "[t]actics undertaken with the intent to increase expenses or delay …."  *Id.* (internal citations omitted).  *See also Haynes v. City & Cty. of San Francisco*, 474 F. App'x 689, 694 (9th Cir. 2012) (finding no abuse of discretion in determining that a pro se plaintiff had "unreasonably and vexatiously multiplied the proceedings" when it was clear after depositions that none of the plaintiff's claims against any of the defendants had any merit but recklessly continued to pursue the frivolous

---

[10]    The video remains active, and can be viewed here:
http://www.12news.com/news/local/valley/former-cops-asu-pd-misreported-crime-stats/255643867

1 claims causing defendants to incur over $300,000 in excess costs).

2    **B.    Mr. Dow Unreasonably Multiplied These Proceedings.**

3        Plaintiffs' Complaint and Amended Complaint were based on an alleged "culture of

4 corruption" within the Arizona State University Police Department ("ASU PD"), vague

5 allegations that a so-called "clique" within the ASU PD was somehow conspiring to harass

6 Plaintiffs, and contentions that Defendants had supposedly "falsified" records in violation of

7 the federal Clery Act.  Per this Court's instructions in its April 7, 2016 Order, counsel for

8 Defendants advised Mr. Dow that the Amended Complaint was baseless and that

9 Defendants would seek its dismissal.  Defendants' draft Motion to Dismiss, provided to Mr.

10 Dow on April 12, 2016, specifically identified for Mr. Dow the endemic problems with the

11 Amended Complaint, including: 1) Plaintiffs' failure to allege membership in a protected

12 class as required for a claim under 42 U.S.C. § 1985; 2) the prohibition against bringing a

13 claim under 42 U.S.C. § 1983 against ABOR or any individual defendant in an official

14 capacity; 3) ABOR's immunity to suit on a claim under the ADEA; 4) Plaintiffs' failure to

15 serve a Notice of Claim before asserting claims arising under state law; and 5) the non-

16 existence of a claim for "falsification of records."  [Dowd Decl., ¶ 5.]  In a detailed letter

17 dated April 13, 2016, Defendants also cautioned Mr. Dow that they would pursue sanctions

18 if the Amended Complaint was not withdrawn.  [*Id.*, ¶ 3.]

19        On April 19, Mr. Dow told counsel for Defendants that "[w]e will be filing an

20 amended complaint to try to address the issues you raised in your letter," and he requested

21 that Defendants stipulate to a date for the amendment.  [Dowd Decl., ¶ 6.]  Based on Mr.

22 Dow's representation that he would revise the pleading to correct its failings, Defendants

23 agreed to an amendment.  [*Id.*, ¶ 8.]

24        On April 25, 2016, Mr. Dow filed the Second Amended Complaint.  However,

25 instead of correcting the deficiencies as Mr. Dow had promised, he "multiplied" the

26 proceedings by adding new false and time-barred allegations.[11]  Defendants then informed

27

28 [11]    The only change that Mr. Dow made to address an issue raised by Defendants was to omit the statutorily-barred demand for punitive damages.

Mr. Dow and his clients again that Plaintiffs' new complaint was fatally flawed, detailing the deficiencies both verbally and in writing. [Dowd Decl., ¶ 10.] Again, Mr. Dow was not deterred, and Defendants were compelled to file their Motion to Dismiss. [*Id.*, ¶ 11.]

In response to the Motion, Mr. Dow took positions belied by settled law. For example, both Defendants' warnings to Mr. Dow and the Motion to Dismiss cited settled law that ABOR, as an arm of the state, is not a "person" within the meaning of § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989). Mr. Dow simply ignored the *Will* case, instead contending that "ABOR is the responsible jural entity just like a city or county as it is ultimately responsible for its own police department, which subjects ABOR to *Monell* [*v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978)]." [Response (Doc. 17), p. 4.] Mr. Dow was flat wrong. The *Monell* court expressly excluded from its ruling any entity considered an arm of the state: "Our holding today is, of course, limited to local government units which are not considered part of the State for Eleventh Amendment purposes." 436 U.S. at 691, n. 54. In addition, the *Will* Court, which involved a state police department, specifically rejected the proposition that an arm of the state such as ABOR can be liable under a *Monell* theory of liability. 491 U.S. at 70 (holding that "it does not follow that if municipalities are persons then so are States"). This Court agreed with Defendants on every point, and dismissed all of the Section 1983 claims against ABOR. [Order , p. 5.]

The Motion to Dismiss further demonstrated that states and state officials sued in their official capacities are immune from suits by private individuals under the ADEA, such that Plaintiff Cornfield was absolutely barred from pursuing an ADEA claim against ABOR or former defendant John Pickens in his official capacity. *See Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 91 (2000); *Bates v. Univ. of Tex. Med. Branch*, 425 F. Supp. 2d 826, 838 (S.D. Tex. 2003) (holding that plaintiff could not state an ADEA claim against a state employee in his official capacity). Again, Mr. Dow ignored this law and stubbornly proclaimed – without a shred of support – that Cornfield had stated a claim against ABOR and Defendant Pickens under the ADEA. [Doc. 17, p. 16.] Again, the Court agreed with Defendants and dismissed the ADEA claim. [Order, p. 7.]

1    Defendants pointed out in both in their warnings to Mr. Dow and in the Motion to

2  Dismiss that Plaintiffs could not assert state law claims because they had not served the

3  Notice of Claim required by A.R.S. § 12-821.01.  Mr. Dow reacted by serving a belated

4  Notice of Claim.  Ignoring directly applicable Arizona case law on the issue, Mr. Dow then

5  falsely contended Plaintiffs had thus satisfied the Notice of Claim statute.  [Doc. 17, p. 15.]

6  The Court swiftly dismissed all of the state law claims with prejudice.  [Order, p. 4.]

7    The Court further agreed with Defendants that Plaintiffs had not alleged facts

8  sufficient to state claims under 42 U.S.C. §§ 1983 or 1985.  [Order, pp. 8-11.]  It cautioned

9  Plaintiffs (and Mr. Dow) that if they intended to re-assert such claims, they should consider

10  whether the legal theory is "viable" under Section 1983 and "take care to allege sufficient

11  facts to support each required element for a plausible § 1985 claim."  [Order, pp. 10-11.]

12  Virtually every ruling of the Court was previewed for Mr. Dow by Defendants' multiple

13  communications, yet Mr. Dow stubbornly pushed forward, requiring Defendants and the

14  Court to go through the costly exercise of briefing and deciding the Motion to Dismiss.

15    Mr. Dow has now prepared and filed the Third Amended Complaint which, as set

16  forth above, is both legally flawed and is founded on multiple false and misleading

17  statements – which must have been known as such by Mr. Dow.  The Court generously gave

18  Mr. Dow and his clients an opportunity to try to plead viable claims and he abused the

19  generosity.  Throughout these proceedings, Mr. Dow has failed to conduct the legal and

20  factual diligence required to plead cognizable claims, despite express (and annotated)

21  warnings that the claims he was attempting to pursue were meritless.

22    The reality that Mr. Dow unreasonably multiplied these proceedings is beyond fair

23  debate.  Because of Mr. Dow's conduct, Defendants have been required to prepare multiple

24  letters, engage in multiple "meet and confer" sessions, brief multiple motions, including two

25  motions to dismiss and a motion for sanctions, and the Court is obligated to expend its

26  resources to address and decide those motions.  Defendants have incurred substantial

27  expense, both in attorneys' fees and the loss of productivity by the individual Defendants

28  and other ABOR employees tasked with dealing with this lawsuit.  Defendants have also had

COHEN DOWD QUIGLEY

to deal with the consequences of a vexatious but very public lawsuit, which has negatively impacted morale within the ASU PD and been enormously disruptive to its ability to operate and function.

### C. Mr. Dow Acted in Bad Faith.

The bad faith required to merit sanctions pursuant to 28 U.S.C. § 1927 is present here. The claims that Mr. Dow attempted to assert on behalf of Plaintiffs in the Amended Complaint, Second Amended Complaint, and Third Amended Complaint are frivolous, as they are based on false allegations and non-existent law. That alone demonstrates bad faith sufficient for an award of sanctions. *See In re Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010) ("[W]hat is clear from our case law is that a finding that the attorney recklessly or intentionally misled the court is sufficient to impose sanctions under § 1927, and a finding that the attorneys recklessly raised a frivolous argument which resulted in the multiplication of the proceedings is also sufficient to impose sanctions under § 1927.") (citations omitted); *Malhiot v. S. Calif. Retail Clerks Union*, 735 F.2d 1133, 1138 (9th Cir. 1984)(holding that counsel's misrepresentations of fact and law "constitutes the requisite bad faith and intentional misconduct for which sanctions under Section 1927 are appropriate"); *Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1119 (9th Cir. 2000) (affirming award of sanctions under Section 1927 where attorney made intentional misrepresentations to the court). *See also Eisenberg Dev. Corp. v. City of Miami Beach*, 95 F. Supp. 3d 1376, 1381 (S.D. Fla. 2015) (awarding fees and costs as a sanction where claims were "founded on false allegations").

The Ninth Circuit has also held that an attorney who presses the same frivolous arguments that failed before other courts acts in bad faith. *See In re Hartford Litig. Cases*, 642 F. App'x 733, 736 (9th Cir. 2016). In *Hartford*, attorneys for plaintiffs improperly attempted to invoke the removal statute, making arguments in support of that effort that they had made unsuccessfully in other cases. The Ninth Circuit affirmed the imposition of sanctions against the attorneys, noting that the fact that the attorneys "continued to press the same frivolous arguments establishes the bad faith required under § 1927." *Id.*

COHEN DOWD QUIGLEY

The situation here is analogous to *Hartford*. Mr. Dow has unsuccessfully sought to pursue in other actions claims with the same deficiencies as those he presented to this Court. For example, in *Smillie v. County of Maricopa et al*, Case No. 2:11-cv-01320-NVW (D. Ariz. 2014), Mr. Dow represented the plaintiff, who asserted both federal and state claims. The District Court dismissed plaintiff's state law claims with prejudice for failure to timely serve notices of claim, and held that the Section 1983 claim was barred by the two-year statute of limitations. It further noted that the Section 1983 allegations were insufficient to state a claim because "Plaintiff has just sued everybody whose name appears in the file and collectively attributes everything to everybody." These deficiencies also permeated Plaintiffs' Second Amended Complaint in this action.

Similarly, in *West v. City of Mesa*, 2015 WL 1959467, *7 (D. Ariz. 2015), the District Court dismissed the plaintiff's conspiracy claim under 42 U.S.C. § 1985, stating that "[a]n indispensable element of a claim under 42 U.S.C. § 1985(3) is some racial, or perhaps otherwise class-based, invidious discriminatory animus behind the conspirator's action." *Id.* (*quoting Sprewell v. Golden State Warriors*, 266 F.3d 979, 989 (9th Cir. 2001)). Mr. Dow failed to cure the defect despite receiving the opportunity to amend the pleading: "There is no mention of the Plaintiff's race, the race of Defendants, or any factual allegations that would suggest racial animus or motive on the part of Defendants." Accordingly, the claim was dismissed with prejudice. *Id.*, *11.[12] Mr. Dow pursued a similarly flawed Section 1985 claim in the Second Amended Complaint here.

The fact that Mr. Dow has now withdrawn from representing Plaintiffs does not insulate him from sanctions. *See, e.g. Holgate v. Baldwin*, 425 F.3d 671, 677 (9th Cir. 2005) (holding that the fact that attorney was allowed to withdraw as counsel due to a conflict of interest "does not protect him from sanctions based on a filing that he made before that withdrawal")(*citing Bader v. Itel Corp. (In re Itel Sec. Litig.)*, 791 F.2d 672, 675 (9th Cir. 1986)). The purpose of imposing sanctions under Section 1927 is to "ensure that those who create unnecessary costs bear them." *Footman v. Cheung*, 341 F. Supp. 2d 1218, 1223 (M.D. Fla.

---

[12] The *Smillie* and *West* decisions are collectively attached as Exhibit D.

2004), *aff'd in part, appeal dismissed in part*, 139 F. App'x 144 (11th Cir. 2005)). *See also Albano v. Shea Homes Ltd. P'ship*, No. CV-07-2359-PHX-SMM, 2012 WL 4513614, *5 (D. Ariz. Oct. 1, 2012) ("The purpose of § 1927 is to both deter attorney misconduct and to compensate the victims of an attorney's malpractice.") (*citing Haynes v. City and County of San Francisco*, 688 F.3d 984, 987–88 (9th Cir. 2012)). Mr. Dow is personally responsible for his conduct in this litigation regardless of his recent withdrawal.

## IV.    Conclusion.

Defendants do not make this request for sanctions lightly. In over 25 years of practice, undersigned counsel has sought Rule 11 sanctions very few times. This action, however, merits the most severe sanctions available. Plaintiffs' Third Amended Complaint – their fourth attempt to properly plead – is both legally groundless and contains multiple false statements that cannot have been included by mistake. Rather, it is a continuation of the harassment Plaintiffs have waged against the ASU PD and its administrators for years. For Rule 11 to mean what it says, sanctions must be imposed to clearly communicate that the federal court system will not be so cavalierly abused.

Moreover, Plaintiffs' counsel David Dow has repeatedly demonstrated the bad faith required to impose sanctions pursuant to 28 U.S.C. § 1927 for unreasonably and vexatiously multiplying these proceedings. He extracted a stipulation from Defendants based on his promise to address the fatal flaws in the Amended Complaint, then filed a Second Amended Complaint that was even more deficient. He then opposed Defendants' Motion to Dismiss with arguments that had no legal or factual merit. And, he prepared and served a Third Amended Complaint – after receiving this Court's admonition to "do better" – that is riddled with demonstrably false allegations and frivolous claims.

For all of the above reasons, Defendants respectfully request that the Court order each of the individual Plaintiffs and Mr. Dow to reimburse Defendants for the substantial attorneys' fees Defendants have incurred in defending this action.

COHEN DOWD QUIGLEY

DATED this 21st day of November, 2016.

**COHEN DOWD QUIGLEY**
The Camelback Esplanade One
2425 East Camelback Road, Suite 1100
Phoenix, Arizona 85016
    Attorneys for Defendants

By:    */s/  Daniel G. Dowd*
          Daniel G. Dowd
          Rebecca van Doren
          Lauren M. Koloseike

COHEN DOWD QUIGLEY

**CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2016, I served the attached document on Plaintiffs and their former counsel via electronic and U.S. Mail at the addresses below:

Charles Cornfield
14810 N. 63rd Ave.
Glendale, AZ  85306
E-mail: flakes@cox.net

Benjamin Robert Flynn
1111 N. 64th St., Unit 9
Mesa, AZ  85205
E-mail: BRFlynn@gmail.com

Bernard Linser
4053 E. Hopi Ave.
Mesa, AZ  85206
E-mail: Budlinser@yahoo.com

Matthew Mansfield
1770 E. Chaparral Drive
Case Grande, AZ  85122
E-mail: Matthew.L.Mansfield@gmail.com

Matthew V. Parker
530 E. McDowell Rd. #107-217
Phoenix, AZ  85004-1500
E-mail: Matthew.V.Parker@gmail.com

William J. O'Hayer
13009 S. 37th St.
Phoenix AZ  85044-3878
E-mail: WJOHayer@gmail.com

David W. Dow
**THE LAW OFFICES OF DAVID W. DOW**
3104 East Camelback Road, #281
Phoenix, Arizona  85016
Ddowlaw1@gmail.com

I further certify that on November 21, 2016, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing, and that the attached document was sent via electronic mail and U.S. Mail to the following:

Charles Cornfield
14810 N. 63rd Ave.
Glendale, AZ 85306
E-mail: flakes@cox.net

Benjamin Robert Flynn
1111 N. 64th St., Unit 9
Mesa, AZ 85205
E-mail: BRFlynn@gmail.com

Bernard Linser
4053 E. Hopi Ave.
Mesa, AZ 85206
E-mail: Budlinser@yahoo.com

Matthew Mansfield
1770 E. Chaparral Drive
Casa Grande, AZ 85122
E-mail: Matthew.L.Mansfield@gmail.com

Matthew V. Parker
530 E. McDowell Rd. #107-217
Phoenix, AZ 85004-1500
E-mail: Matthew.V.Parker@gmail.com

William J. O'Hayer
13009 S. 37th St.
Phoenix AZ 85044-3878
E-mail: WJOHayer@gmail.com

David W. Dow
THE LAW OFFICES OF DAVID W. DOW
3104 East Camelback Road, #281
Phoenix, Arizona 85016
Ddowlaw1@gmail.com

By: */s/   Toni Patino*

COHEN DOWD QUIGLEY