1
2
3
4
5
6
7
8

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

9  Charles Cornfield, et al.,                            No. CV-16-00924-PHX-ROS

10             Plaintiffs,                                    **ORDER**

11  v.

12  John Pickens, et al.,

13             Defendants.

14

15          Plaintiffs are five current or former employees of the Arizona State University

16  Police Department attempting to assert numerous claims against two individuals and the

17  Arizona Board of Regents ("ABOR").  The Court dismissed the previous complaint after

18  concluding it provided insufficient guidance regarding the claims Plaintiffs were

19  attempting to assert.  The operative complaint suffers from similar flaws.  This case will

20  be dismissed without further leave to amend.

21                                     **BACKGROUND**

22          The following facts are taken from Plaintiffs' Third Amended Complaint.  (Doc.

23  24).  Plaintiffs Charles Cornfield, Benjamin Robert Flynn, Bernard Linser, William J.

24  O'Hayer, and Matthew V. Parker are either current or former officers with the ASU

25  Police Department ("ASU PD").  According to the complaint, these individuals were

26  harmed in a variety of ways during their employment.  For some of the individuals, there

27  is no connection between their claims and the claims asserted by the others.  Because of

28  this, it is simplest to recount the events and claims as they are grouped in the complaint

and then analyze each claim separately.

**A. William J. O'Hayer**

O'Hayer alleges on some unidentified date while working for the ASU PD he "suffered an on-the-job injury that left his right arm disabled to the point where he could no longer safely use a firearm." (Doc. 24 at 5). O'Hayer apparently was unable to work for a time but returned to work in April 2014. His injury, however, "forced him to retire from the ASU PD on June 20, 2014." During the two-month period O'Hayer worked after his injury, "he was subject to discrimination based upon his disability." He was also retaliated against "for having become disabled." This discrimination and retaliation consisted of "[b]eing the target of unwarranted investigations," having his training records "[i]llegally altered," being contacted at home "sometimes when he was sleeping," and "[b]eing ignored . . . by superiors." (Doc. 24 at 6). The complaint does not explain what investigation O'Hayer is referencing, who altered his training records and how, why it was inappropriate for him to be contacted at home, or when he was "ignored" by his superiors. Moreover, the complaint does not allege O'Hayer was forced out of his job as a result of his disability.

Based on his alleged mistreatment, O'Hayer alleges a single claim against the ABOR for disability discrimination in violation of federal law. O'Hayer seeks compensatory damages as well as injunctive relief. The request for injunctive relief is strange, however, because O'Hayer alleges he is unable to work due to his disability. Thus, it is unclear what form of injunctive relief he seeks.

**B. Charles Cornfield**

Cornfield worked for the ASU PD from 1995 until 2015. During his employment, Cornfield believes the ASU PD and his superiors discriminated against him because of his age. Cornfield's belief is based on three events: 1) he was "denied the use of a Segway vehicle"; 2) he was told "he should be planning for retirement when he did not plan any retirement"; and 3) he was not allowed to immediately return to work after he had been off work due to medical leave. Cornfield does not allege who denied him use of

the Segway or when that happened, does not allege who told him to plan for retirement or when that happened, nor does he allege who refused to permit him to return to work or when that happened.  Cornfield's age discrimination claim is brought under Arizona law against the ABOR and he seeks only injunctive relief, apparently in the form of reinstatement.

**C.  Charles Cornfield, Benjamin Robert Flynn, and Bernard Linser**

In addition to his age discrimination claim, Cornfield asserts a free speech claim. This claim is also asserted by other ASU officers Benjamin Robert Flynn and Bernard Linser.  The complaint alleges from 2014 through 2015, there was a blog "popular among the ASU community."  That blog included comments from "anonymous bloggers about public safety on the ASU campus" and the ASU PD.  Those comments were often critical of the ASU PD.  The chief at that time was Michael Thompson who believed some of the comments must have been made by ASU PD officers.  Thompson arranged for the Arizona Department of Public Safety to investigate and determine who had contributed to the blog.  Investigators questioned Cornfield, Flynn, and Linser during this investigation. The complaint describes the questioning as "unwarranted" and alleges Cornfield, Flynn, and Linser "suffered emotional distress and worry about their jobs" because of the questioning.  The questioning also "had a chilling effect" which discouraged them "from future protected speech on matters of public concern."

Based solely on the questioning, Cornfield, Flynn, and Linser allege a claim for violation of their free speech rights under 42 U.S.C. § 1983.  The claim is described as "[r]etaliation for perceived exercise of free speech" and brought solely against Thompson, seeking unspecified "[p]rospective injunctive relief" and "[d]eclaratory relief."

**D.  Matthew V. Parker**

Parker worked for the ASU PD from August 2008 until January 2014.  During that time Parker held a prominent position in a police union.  In that position, "Parker often clashed with the Chief and other high ranking officers of the ASU PD."  In addition, "the

Chief" and others "openly showed hostility to Parker" because of his union involvement. The complaint contains no further factual elaboration regarding these clashes or "hostility" and the references to "the Chief" are not references to Defendant Thompson but to a prior chief of police.

Parker voluntarily left the ASU PD in 2014 and was hired by the Arizona Attorney General's office. During the hiring process, Parker disclosed he had been the subject of four internal investigations while at the ASU PD. Later, an investigator for the Attorney General's office contacted the ASU PD "to find out exactly what internal investigation[s] had been done at the ASU PD on Parker." Defendant Louis Scichilone, the ASU PD employee in charge of records, told the investigator that Parker had been the subject of six internal investigations. Nothing happened as a result of the Attorney General's office learning that information and Parker continued working for the Attorney General's office.

A short while later, Parker was injured and had to leave his job. After leaving, the Attorney General's office "reported to AZPOST[1] that [Parker] was not eligible for rehire because he had misrepresented . . . [the] number of internal investigations while employed at ASU PD." (Doc. 24 at 11). Based on that, AZPOST "commence[d] decertification of Parker." If decertification occurs, Parker will not be able to work as a peace officer.

Parker asserts a claim under § 1983 for "[r]etaliation for perceived exercise of free speech and freedom of association." The basis for this claim is not entirely clear but Parker appears to believe the ASU PD misrepresented to the Attorney General's office the number of internal investigations against him in retaliation for his work with the police union. This claim is asserted against Scichilone and Thompson but seeks only injunctive and declaratory relief. As with many other claims, it is unclear what relief Parker is actually seeking because neither Scichilone nor Thompson have any ongoing contact with Parker and there is no indication how Parker would be entitled to

_____

[1] The complaint does not explain what AZPOST is but, according to its website, any peace officer wishing to work in Arizona must be certified by AZPOST.

1   reinstatement given that he voluntarily left the ASU PD.

2          In addition to his § 1983 claim, Parker also asserts a state-law claim labeled as

3   "Violation of Arizona Public Records Act."   This claim is based on Parker's recent

4   unsuccessful attempts "to inspect his personnel files and in particular all records of all

5   internal investigations by the ASU PD."   The refusal to allow him complete access to

6   these records allegedly violates a state statute known as the Arizona Public Records Act.

7   This claim is brought against the ABOR and seeks the production of records and statutory

8   damages.

9                                        **ANALYSIS**

10  **I.  Standard for Motion to Dismiss**

11         "To survive a motion to dismiss, a complaint must contain sufficient factual

12  matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v.*

13  *Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).   A claim is plausible "when the

14  plaintiff pleads factual content that allows the court to draw the reasonable inference that

15  the defendant is liable for the misconduct alleged." *Id.*   This does not require "detailed

16  factual allegations," but it does require "more than an unadorned, the-defendant-

17  unlawfully-harmed-me accusation." *Id.*   This is not a "probability requirement," but a

18  requirement that the factual allegations show "more than a sheer possibility that a

19  defendant has acted unlawfully." *Id.*

20  **II.  O'Hayer's Disability Discrimination Claim**

21         O'Hayer alleges a single claim for disability discrimination under the

22  Rehabilitation Act, 29 U.S.C. § 794.   O'Hayer did not assert this claim until the Third

23  Amended Complaint.   Rehabilitation Act claims are subject to a two-year statute of

24  limitations. *Oskowis v. Sedona Oak-Creek Unified Sch. Dist. #9*, No. CV-16-08063-

25  PCT-JJT, 2017 WL 1135558, at *3 (D. Ariz. Mar. 27, 2017) (Rehabilitation Act claims

26  subject to Arizona's two-year limitations period).   O'Hayer alleges he retired on June 20,

27  2014.   Thus, his claim accrued no later than that date.   O'Hayer filed his original

28  complaint on February 17, 2016, his Amended Complaint on February 26, 2016, his

Second Amended Complaint on April 25, 2016, and his Third Amended Complaint on August 25, 2016.  Based on these dates, if his claim relates back to any of his first three complaints, it is timely.  If, however, the claim does not relate back, it must be dismissed as untimely.

A claim asserted in an amended pleading relates back to an earlier pleading if the new claim "arose out of the conduct, transaction, or occurrence set out . . . in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  As interpreted by the Ninth Circuit, a new claim meets this test "if it will likely be proved by the same kind of evidence offered in support of the original pleading."  *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) (quotation marks and citation omitted).  More importantly, the new claim must "share a common core of operative facts" with the previously-asserted claims such "that the adverse party has fair notice of the transaction, occurrence, or conduct called into question."  *Id.*

O'Hayer's Rehabilitation Act claim in the Third Amended Complaint does not relate back to an earlier pleading because no earlier pleading indicated O'Hayer was attempting to assert a disability-related claim.  There does not appear to have been any reference to disability-related issues in the Original Complaint or Amended Complaint. It was only in the Second Amended Complaint that O'Hayer made even an oblique reference to a disability issue.  In that complaint, O'Hayer provided lengthy allegations about various forms of mistreatment he suffered, almost all of which had no possible connection to an alleged disability.  The mistreatment identified in the Second Amended Complaint included O'Hayer having his answers on written exams marked incorrect despite being correct, suffering some unidentified form of harassment in connection with new radio equipment, being told to make false traffic stops, and being directed to alter written reports.  These instances of mistreatment are not linked to O'Hayer's alleged disability.  Instead, the *only* reference to disability issues in the Second Amended Complaint was a one-half sentence alleging O'Hayer had been "out on leave for disability issues [and then] required to return to work [and] denied light duty work."

(Doc. 10 at 16).  The portion of the Second Amended Complaint listing the claims did not allege a Rehabilitation Act or other disability-related claim nor did it include any additional reference to disability-related issues.  In sum, no reasonable reader of the Second Amended Complaint would have known O'Hayer was attempting to assert a Rehabilitation Act claim.  *See ASARCO*, 765 F.3d at 1006 (relation back requires earlier party be sufficient to notify party "of litigation concerning a particular transaction or occurrence").

Without some reasonable indication in the prior complaints that O'Hayer was attempting to assert a disability-related claim, his new claim in the current complaint does not relate back.  And because the operative complaint was filed outside the two-year statute of limitations, O'Hayer's Rehabilitation Act claim must be dismissed as untimely.

**III. Cornfield's Age Discrimination Claim**

Cornfield's age discrimination claim is asserted exclusively under Arizona law. The Court has supplemental jurisdiction over this claim only to the extent it is "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  Cornfield's age discrimination claim, however, has no connection to any of the claims where original jurisdiction exists.  In other words, Cornfield's age discrimination claim does not share "a common nucleus of operative fact" with any of the events underlying the federal claims.  *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004) (quotation marks and citation omitted).

According to Cornfield, he was discriminated against when he was denied use of a Segway, was asked about retirement, and was not allowed to return to work after being cleared by his physician.  The complaint does not draw any connection between these events and the events involving alleged violation of his free speech rights or any of the other federal claims.  Therefore, Cornfield's age discrimination claim cannot proceed in federal court.

**IV.  Cornfield, Linser, and Flynn's Retaliation Claim**

As alleged in the Third Amended Complaint, Cornfield, Linser, and Flynn believe they were retaliated against when they were questioned in connection with the investigation into the critical comments posted on the ASU PD blog.  To state a plausible retaliation claim, the complaint must allege facts establishing, among other things, that Cornfield and the others suffered an "adverse employment action."  *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003).   There is no adverse employment action alleged in the complaint.

In the First Amendment retaliation context, an actionable adverse employment action "need not be severe and it need not be of a certain kind."  *Dahlia v. Rodriguez*, 735 F.3d 1060, 1078 (9th Cir. 2013).  When determining if a particular action constituted an adverse employment action, "the proper inquiry is whether the action [was] reasonably likely to deter employees from engaging in protected activity."  *Id.* (quotation marks and citation omitted).  And "[d]epending on the circumstances, even minor acts of retaliation can infringe on an employee's First Amendment rights."  *Id.* at 1079 (quotation marks and citation omitted).

Viewing the complaint in the light most favorable to Cornfield, Linser, and Flynn, the only adverse employment action possibly at issue is that they "had to endure unwarranted internal investigations."  (Doc. 24 at 8).   The complaint alleges those "investigations" happened after Thompson became concerned that some of the comments on the blog "were 'inside information.'"  (Doc. 24 at 8).  The "investigations" consisted of Cornfield, Linser, and Flynn being questioned about their possible involvement in the blog.   Cornfield, Linser, and Flynn believe that questioning—standing alone—can support a retaliation claim.  It cannot.

Cornfield, Linser, and Flynn do not cite any authority that being questioned in an internal investigation, without any other potentially adverse actions against them, is sufficient to support a retaliation claim.   Unlike cases involving plausible retaliation claims, the complaint does not allege Cornfield and the others were threatened or excluded from certain activities. *See Coszalter v. City of Salem*, 320 F.3d 968, 975 (9th

Cir. 2003) (threats and exclusion from activities can qualify as adverse actions).   Nor does the complaint allege Cornfield and the others were prevented from pursuing promotional opportunities, forfeited pay, placed on administrative leave, or even suffered some form of "general stigma" from being questioned during the investigation.  *Dahlia*, 735 F.3d 1060 at 1079.  While the threshold for a viable retaliation claim is low, it is not so low such that merely being questioned in connection with an internal investigation can support a claim.  As noted by the Ninth Circuit, sometimes "the would-be retaliatory action is so insignificant that it" cannot support a retaliation claim.  *Coszalter*, 320 F.3d at 975.  That is the situation here.  The retaliation claim must be dismissed.

**V. Parker's Retaliation Claim**

Parker also asserts a retaliation claim but his claim is not based on the internal investigation.  Instead, Parker alleges he was retaliated against because of his speech and association with the police union.  The causal chain Parker alleges is convoluted and the factual allegations supporting his claim are very sparse.[2]  The claim appears to be based on interactions Parker had with Scichilone during Parker's tenure with the ASU PD. Parker does not allege when those disputes occurred but the disputes allegedly led Scichilone to misrepresent Parker's history of internal investigations to the investigator with the Attorney General's office long after Parker left the ASU PD.   That misrepresentation did not injure Parker immediately but only after he left the Attorney General's office and that office reported to yet another entity that Parker was not eligible for rehire.   The complaint does not contain sufficient factual allegations to make it plausible that Parker's speech, perhaps years before he left the ASU PD, was the motivating factor for Scichilone's purported misrepresentation.

Parker has not pled sufficient facts establishing when he engaged in protected speech or that he suffered a cognizable adverse action as a result of that speech.  But even assuming he had, Parker's retaliation claim would be viable only if he had alleged facts

---

[2] Parker alleges this claim against Thompson and Scichilone.  However, Parker does not make any allegations linking Thompson to any of the purported retaliatory conduct.  Therefore, Parker has not stated a plausible claim against Thompson.

showing his "speech was a substantial motivating factor for the adverse action."[3]  *Cain v. Tigard-Tualatin Sch. Dist. 23J*, 262 F. Supp. 2d 1120, 1125 (D. Or. 2003).  The complaint, however, does not allege any facts providing a plausible link between Scichilone's statement to the Attorney General's investigator and Parker's involvement with the union.  The complaint alleges Scichilone had "expressed his hostility" about the union but there is no indication when that occurred or what Scichilone said.  Absent some additional facts showing the hostility remained at the time Parker left, it is not plausible to attribute Scichilone's alleged misrepresentation to a desire to retaliate against Parker for his union-related speech.  Parker has pled a legal conclusion that Scichilone intended to retaliate against him but he has not alleged facts supporting that conclusion.  Parker's retaliation claim must be dismissed.

**VI. Parker's Public Records Claim**

Parker asserts a claim under the Arizona Public Records Act.  To the extent Parker is seeking monetary damages on this claim, his failure to comply with Arizona's notice of claim statute is fatal.  Alternatively, if Parker is attempting to obtain injunctive relief, he cannot pursue his claim here.

Pursuant to Arizona statute, any person who has been denied access to public records "may appeal the denial through a special action in the superior court, pursuant to the rules of procedure for special actions against the officer or public body."  A.R.S. § 39-121.02.  The Ninth Circuit has held "[a] litigant cannot use supplemental jurisdiction to have a federal judge instead of a state judge perform the judicial review of a state administrative agency decision which the state statute assigns to a state court."  *Misischia v. Pirie*, 60 F.3d 626, 631 (9th Cir. 1995).  Based on that, Parker is not entitled to have a federal court review the ASU PD's alleged failure to provide the records Parker seeks.[4]

---

[3] Retaliation claims usually arise in the context of public employment but the requirement of an adverse action exists even when no employment relationship exists. *Cain v. Tigard-Tualatin Sch. Dist. 23J*, 262 F. Supp. 2d 1120, 1125 (D. Or. 2003) (nothing same elements are present in employment and non-employment context for First Amendment retaliation claims).

[4] The Court also lacks supplemental jurisdiction over this claim.  Parker's

## VII. Leave to Amend

There have been four complaints filed in this case. While only two of those complaints have been the subject of motions to dismiss, the most recent complaint did not come meaningfully closer to stating plausible claims than the previous complaints. And the present complaint still contained claims that were very far from plausible. In dismissing the previous complaint, the Court provided substantial guidance regarding what would be necessary for any claims to proceed. Plaintiffs' recent complaint did not follow that guidance. It now appears Plaintiffs are not able to state plausible claims. Therefore, it would be futile to grant further leave to amend.

## VIII. Sanctions Will Be Imposed

Defendants seek sanctions against Cornfield, Flynn, Linser, O'Hayer, and Parker ("Plaintiffs") as well as David Dow, Plaintiffs' previous counsel. Sanctions are sought against Plaintiffs and Dow under Federal Rule of Civil Procedure 11 and against Dow under 28 U.S.C. § 1927. The sequence of events leading up to Defendants' filing the sanctions motion is complicated but must be addressed in some detail.

### A. Factual Background of Sanctions Motion

In February 2016, Dow filed Plaintiffs' original complaint in state court. (Doc. 1-1 at 2). While still in state court, Dow filed an Amended Complaint. The Amended Complaint was removed to federal court and, after removal, Defendants sent Dow a letter explaining none of the claims in the Amended Complaint were plausible. Defendants informed Dow they would seek sanctions if the claims were not withdrawn. After Defendants and Dow discussed the flaws in the Amended Complaint, Dow stated he would amend the complaint again to address Defendants' concerns. Dow then filed the

---

retaliation claim is based on Scichilone's alleged statement in 2014 to the investigator from the Attorney General's office. Parker's access to public records claim is based on recent attempts by Parker to review his personnel file. These two claims do not arise out of a common nucleus of operative fact. And Parker's public records claim has no relationship to any other claim in the complaint. Finally, even assuming supplemental jurisdiction did exist, there are no longer any federal claims pending such that an exercise of supplemental jurisdiction would not be appropriate. *See Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1046 (9th Cir. 1994) (court should dismiss state-law claim when federal claims are dismissed before trial).

Second Amended Complaint which did not address the flaws previously pointed out to him.  (Doc. 10).

On May 31, 2016, Defendants moved to dismiss the Second Amended Complaint. Dow filed an opposition but that opposition did not meaningfully engage with the arguments in the motion to dismiss.  After reviewing the opposition, Defendants served Dow with a motion for sanctions on July 5, 2016.  Because sanctions were sought under Rule 11, there was a 21-day safe harbor before Defendants could file their motion.  And before that safe harbor period expired, the Court granted the motion to dismiss, finding the Second Amended Complaint did not state any plausible claims.  Dow was granted leave to amend but was warned he needed to file a substantially improved complaint to have any chance of proceeding.

On August 25, 2016, Dow filed the Third Amended Complaint.  On October 13, 2016, Dow was allowed to withdraw and on October 14, 2016, Defendants filed a motion to dismiss.  Finally, on October 28, 2016—approximately two weeks after filing their motion to dismiss—Defendants served another sanctions motion on Dow and Plaintiffs. That motion argued the Third Amended Complaint violated Rule 11 because it contained "frivolous and unfounded claims."  (Doc. 39 at 2).  The motion sought Rule 11 sanctions as well as sanctions under § 1927.  (Doc. 39 at 2).  Neither Dow nor Plaintiffs took any action after receiving the sanctions motion.  Accordingly, after the safe harbor period elapsed, Defendants filed the motion for sanctions.  (Doc. 39).

Dow and Plaintiffs filed separate responses to the motion for sanctions. According to Dow, he cannot be sanctioned under Rule 11 because he withdrew as counsel before the motion for sanctions was served.  That is, Dow claims he did not have the power to withdraw the Third Amended Complaint and, therefore, Rule 11 cannot reach his actions.  In addition, Dow claims he did not engage in any conduct that would subject him to sanctions under Rule 11 or § 1927.  As for Plaintiffs, they oppose sanctions under Rule 11 by arguing the request was filed prematurely because the Third Amended Complaint had not yet been dismissed when the motion was filed.  Plaintiffs

also claim any sanctions should be against Dow because it would be inappropriate to sanction them given that the deficiencies in the Third Amended Complaint were the product of "Dow's neglect and incompetence." (Doc. 42 at 9).

### B. Standard for Rule 11 Sanctions

An attorney or a party can be subject to Rule 11 sanctions when he signs, files or advocates for "a pleading, written motion, or other paper" that contains factual contentions without factual support or "when he presents to the court claims, defenses, and other legal contentions . . . [not] warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." *Holgate v. Baldwin*, 425 F.3d 671, 675-76 (9th Cir. 2005). Defendants' request for Rule 11 sanctions focuses on factually baseless assertions in the Third Amended Complaint. The Court will limit its analysis under Rule 11 to the factual assertions.

Plaintiffs did not sign or file the Third Amended Complaint but they later advocated for it by opposing the motion to dismiss. *See Buster v. Greisen*, 104 F.3d 1186, 1190 n.4 (9th Cir. 1997) (noting Rule 11 allows for sanctions based on filing as well as "later advocating" a document). Thus, they may be sanctioned if the complaint violated Rule 11.

Dow signed and filed the complaint prior to withdrawing. Dow now argues his withdrawal prevents him from being sanctioned under Rule 11. That is incorrect. While Dow may not have represented Plaintiffs at the end of the safe-harbor period, he was not powerless to avoid Rule 11 sanctions. If Dow believed the pleading he drafted, signed, and filed should be withdrawn because it lacked factual or legal support, he should have sought guidance from the Court regarding the appropriate path to pursue. Dow was not, however, entitled to draft, sign, and file a potentially sanctionable filing and then avoid all responsibility by withdrawing. Therefore, Dow can also be held liable under Rule 11.

For Plaintiffs or Dow to be sanctioned under Rule 11 based on the Third Amended Complaint, the Court "must conduct a two-prong inquiry." *Holgate*, 425 F.3d at 676.

First, the complaint must have been "legally or factually baseless from an objective perspective." *Id.*  And second, the Court must determine if the attorney or party "conducted a reasonable and competent inquiry before signing and filing it [or advocating it]." *Id.*  The motion for sanctions identifies the following factual statements as baseless.

- Plaintiff Cornfield and Linser alleged they "had to endure unwarranted internal investigations which they reasonably believed might have been criminal investigations."

- Cornfield alleged he had been constructively discharged on July 2, 2015, because of "hostility at the ASU PD based upon his age."  (Doc. 24 at 7).

- Parker alleged Scichilone falsely reported to the Attorney General's Office that he had been subject to six internal investigations when, in fact, he had only been subject to four.

- Parker's allegations reference "the Chief" when describing his disagreements with the ASU PD regarding union activities.  Parker does not clarify, however, that "the Chief" being referenced is a different individual than the current Chief.

All four of these statements were, in fact, factually baseless.

First, prior to their interviews in connection with the internal investigation, Cornfield and Linser signed documents indicating they were being interviewed in connection with an "administrative investigation," not a criminal investigation, and there were "no allegations of misconduct" against them at that time.  (Doc. 39-1 at 50).  The documents further indicated Cornfield and Linser were not the focus of the investigation but were being interviewed as witnesses or potential witnesses only.  (Doc. 39-1 at 50).  From an objective perspective, the complaint's allegation that the investigations "might have been criminal investigations" was factually baseless.

Second, Cornfield's allegation that he was constructively discharged on July 2, 2015, is contradicted by an email Cornfield sent on February 13, 2015 stating "It is my intention to retire from Arizona State University effective July 2, 2015.  Please let me know what paperwork and/or steps are necessary to facilitate this."  (Doc. 39-1 at 47).  From an objective perspective, Cornfield's claim that he was constructively discharged in

July after sending that email in February was factually baseless.

Third, Parker's allegation that he had been subject to only four investigations is contradicted by an internal document showing Parker was subject to six internal investigations.   That document was produced to Parker long before he made the allegation.  From an objective perspective, therefore, the allegation regarding the number of investigations was factually baseless.

And fourth, Parker knew "the Chief" relevant to his disagreements with the ASU PD over union activities was a different individual from the current Chief.  At the time he advocated for the Third Amended Complaint, Parker knew the current Chief took office after Parker left the ASU PD.  By failing to distinguish between the two chiefs, Parker attempted to allege a factual basis for the current Chief having a reason to retaliate against Parker for his previous union activities.

The four statements were factually baseless and the Court must determine if Plaintiffs or Dow made a reasonable inquiry before asserting these statements.  They did not.  In fact, the statements must have been knowingly false.  First, having signed documents indicating the interviews were not a criminal matter, Cornfield and Linser could not have believed otherwise.  Second, Cornfield must have known of the email he sent regarding his planned retirement.  Third, Parker must have known about the actual number of internal investigations he had been involved in while at the ASU PD.  And fourth, Parker must have known the chief of police had changed.  While Cornfield, Linser, and Parker are now proceeding pro se, that does not excuse their behavior.  *See Warren v. Guelker*, 29 F.3d 1386, 1390 (9th Cir. 1994) ("Rule 11 applies to pro se plaintiffs, the court must take into account a plaintiff's pro se status when it determines whether the filing was reasonable.").   Pro se plaintiffs are not free to knowingly misrepresent basic facts regarding their claims.  Therefore, Cornfield, Linser, and Parker violated Rule 11 by making baseless factual allegations.

The same analysis, however, does not apply to Flynn and O'Hayer.  Flynn and O'Hayer likely should have conducted an inquiry to ensure the factual allegations

regarding the other named plaintiffs were accurate.  But Flynn and O'Hayer's pro se status supports the Court overlooking their failure to do so.  *Id.*  In addition, there are no factual allegations involving Flynn and O'Hayer that satisfy the two-step test under Rule 11.  Accordingly, Flynn and O'Hayer cannot be sanctioned under Rule 11.

As for Dow, he claims to have "reviewed and re-reviewed thousands of pages of documents and recordings prior to filing the Complaint in this case and re-reviewed the evidence prior to drafting a proposed [Third Amended Complaint]."  (Doc. 44).  Dow does not explain, however, what documents he is referencing nor does he explain how the documents established the good-faith basis for the particular factual allegations identified above.  Instead of offering a reasonable explanation for those allegations, Dow's opposition to the motion for sanctions cites to irrelevant matters such as defense counsel's involvement in unrelated litigation.  (Doc. 44 at 2).  Dow also claims he has never been sanctioned before.  But Dow offers no explanation how a lack of prior sanctions is responsive to the particular issues presented in the motion for sanctions.  With no evidence establishing a basis for Dow's factual allegations outlined above, the only conclusion is that he did not conduct a reasonable inquiry prior to filing the Third Amended Complaint.

In sum, the four factual allegations were objectively false and could not have been the product of a reasonable inquiry by Cornfield, Linser, Parker, or Dow.  Therefore, these allegations are sanctionable under Rule 11.

**D.  Sanctions Under § 1927 Against Dow**

In addition to Rule 11, Defendants also seek sanctions against Dow pursuant to 28 U.S.C. § 1927.  That statute provides any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  To impose sanctions under this statute, the Court must make a finding of "subjective bad faith."  *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996).  "Bad faith is present when an attorney knowingly or recklessly

raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Id.*

In filing the complaints and other documents in this case, Dow engaged in a wide variety of inappropriate conduct. As noted in the order granting the earlier motion to dismiss, the Second Amended Complaint contained voluminous factual allegations that had no connection to any plausible legal claims. For example, the Second Amended Complaint included allegations about a bicycle crash that occurred in 2002. That crash was completely irrelevant to the claims at issue. Overall, the Second Amended Complaint consisted of disconnected allegations where eight plaintiffs were trying to sue twelve defendants on five separate claims with no way a diligent reader could discover, precisely, who was alleged to have harmed each plaintiff or how. The Second Amended Complaint did not present claims with even a remotely plausible chance of proceeding.

Beyond the factual deficiencies in the Second Amended Complaint, it asserted frivolous claims and legal theories given the undisputed underlying facts. The frivolous claims and theories included, but were not limited to, the following. First, Dow asserted numerous state-law claims for money damages but he conceded no notice of claim was filed prior to asserting those claims. That failure barred the state-law claims and Dow made no non-frivolous argument that the state-law claims could proceed. Second, Dow asserted claims pursuant to 42 U.S.C. § 1983 against the Arizona Board of Regents ("ABOR"). As explained in the Court's Order, arms of a state are not subject to suit under § 1983 and Dow offered no non-frivolous argument in support of asserting a § 1983 claim against ABOR. Third, Dow attempted to assert a § 1983 claim against ABOR based on a municipality liability theory. According to Dow, "in most cases, claims against police officers are litigated under *Monell v. New York City Dept. of Social Serv.* [by bringing suit] against the responsible entity; usually a city or county."[5] That is

---

[5] That is inaccurate and represents a failure to research and understand applicable law. Most § 1983 claims against police officers are asserted against the officers in their individual capacity and only when a plaintiff believes a policy or practice of the relevant entity caused a deprivation of constitutional rights is a claim under *Monell* appropriate.

incorrect but, even assuming ABOR could be subject to a *Monell* claim, Dow never asserted a plausible factual or legal basis for arguing the facts in this case implicated an unconstitutional policy or practice.  Fourth, Dow asserted a conspiracy claim under § 1985 without explaining the class-based considerations at issue.   And fifth, Dow presented a number of arguments in his opposition to the motion to dismiss that had nothing to do with the claims alleged in the complaint.  For example, Dow argued Defendants had violated the Family Medical Leave Act, the Occupational Safety and Health Act ("OSHA"), and interfered with the right to unionize.  While the complaint had mentioned these issues, there was no indication Dow was actually attempting to pursue such claims.  Moreover, it is well-established that under at least one of the statutes cited, no private right of action exists.  *See Clark v. Wells Fargo Bank*, 669 F. App'x 362, 363 (9th Cir. 2016) ("The district court properly dismissed [the plaintiff's] allegations of OSHA violations because OSHA does not provide a private right of action.").   Thus, Dow's arguments regarding irrelevant statutes were an attempt to confuse the issues.

Dow's conduct in asserting all of these baseless claims and theories is striking because Defendants informed him of the flaws prior to moving to dismiss the Amended Complaint.  Defense counsel sent Dow a twelve-page letter and draft motion to dismiss which outlined in detail the flaws in the Amended Complaint.  Dow responded that he planned to amend again to cure the deficiencies.  (Doc. 39-1 at 24).  Dow then filed the Second Amended Complaint without addressing any of Defendants' points.  In fact, the Second Amended Complaint made very few changes, none of which materially impacted the viability of Dow's claims and arguments.  In light of defense counsel's lengthy explanation of the legal flaws in the Amended Complaint, Dow's decision to continue to pursue baseless factual and legal theories establishes he was knowingly or recklessly pursuing frivolous claims and theories.  Dow's actions constituted bad faith attempts to unreasonably and vexatiously prolong this litigation.[6]

---

[6] Dow's filings were frivolous.  Therefore, recklessness suffices.  *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996) ("For sanctions to apply, if a filing is submitted recklessly, it must be frivolous, while if it is not frivolous, it must be

### E.  Amount of Sanctions

Cornfield, Linser, Parker, and Dow violated Rule 11 and Dow violated § 1927. The only remaining issue is the appropriate amount of sanctions to assess against each individual.

Pursuant to Rule 11(c)(4), any sanction imposed must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." This allows for "nonmonetary directives," payment of "a penalty into court," or an award of "part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."  Section 1927 is slightly more limited, allowing only for an award of "the excess costs, expenses, and attorneys' fees incurred" as a result of the sanctionable conduct.  *See Prosser v. Prosser*, 186 F.3d 403, 407 (3d Cir. 1999) ("[S]ection 1927 only allows the court to award costs and attorney fees payable to the opposing party, not payable to the court.").  Under both Rule 11 and § 1927, Defendants request the Court award "the substantial attorneys' fees [they] have incurred in defending this action." (Doc. 39 at 18).  This appears to be a request for all the fees Defendants incurred in defending this suit.

As recently noted by the Supreme Court, an award of attorneys' fees under Rule 11 or § 1927 must be based on a causal link between the misconduct and the amounts awarded.  *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 n.5 (2017). Defendants' motion does not address this causation requirement.   In particular, Defendants do not offer the exact amounts incurred as a result of discrete instances of misconduct.  Absent such evidence, the Court cannot award Defendants the fees they seek.  Moreover, awarding Defendants a substantial amount of fees might be more than necessary to deter future similar conduct by Cornfield, Linser, and Parker.  *See* Fed. R. Civ. P. 11(c)(4) (sanction "must be limited to what suffices to deter repetition of the

intended to harass.").

conduct").

Based on the need for a causal link between the sanctionable conduct and the fees awarded, the parties will be directed to meet and confer and determine if an agreement can be reached regarding the appropriate amount of sanctions to impose.  In conferring, the parties should keep in mind that the sanctions against Cornfield, Linser, and Parker should be more limited than the sanctions against Dow.  In fact, the sanctions against Cornfield, Linser, and Parker need not be substantial as the goal is deterrence, not punishment.  During their conferral, Defendants must provide Cornfield, Linser, and Parker the documentation establishing the fees they incurred as a result of the four factual misstatements identified above.  As for the attorneys' fees against Dow, Defendants should offer documentation identifying the fees incurred as a result of each instance of his sanctionable conduct.

In the event the parties cannot reach an agreement, Defendants will be required to file a motion setting forth the precise amount of sanctions they seek.  That motion should separately identify the sanctions sought against Cornfield, Linser, Parker, and Dow under Rule 11 as well as the sanctions sought against Dow under § 1927.  The motion must be accompanied by all appropriate documentation linking the fees incurred to discrete instances of sanctionable conduct.  *See* Local Rule 54.2 (outlining requirements for fees motion).

Accordingly,

**IT IS ORDERED** the Motion to Dismiss (Doc. 32) is **GRANTED**.  The Clerk of Court is directed to enter a judgment of dismissal with prejudice.

**IT IS FURTHER ORDERED** the Motion for Sanctions (Doc. 39) is **GRANTED IN PART**.

**IT IS FURTHER ORDERED** the parties shall confer regarding the amount of sanctions within seven days of this order.

**IT IS FURTHER ORDERED** no later than **August 11, 2017**, the parties shall either file a joint statement that they have reached an agreement regarding the appropriate

form of sanctions or, if necessary, Defendants shall file a motion for attorneys' fees as outlined above.  The response and reply shall be filed as required by Local Rule 54.2.

Dated this 24th day of July, 2017.

Honorable Roslyn O. Silver
Senior United States District Judge